JOHN J. MORRIS ET AL. *v.* ANGELO P. COSTA ET AL.

HOUSE, C. J., BOGDANSKI, LONGO, SPEZIALE and HEALEY, Js.

Argued  January  4—decision  released  April  11,  1978

*Harold L. Rosnick,* with whom, on the brief, was *Sigmund L. Miller,* for the appellants (defendants).

*Richard K. Mulroney,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J.   The plaintiffs brought this action against the defendants Angelo P. Costa, Rose M. Costa, and Sadie P. Costa seeking the specific performance of an agreement to convey certain real estate in Fairfield and also for exemplary damages allegedly caused by the fraud and misrepresentation of the defendants.   The trial court found

for the plaintiffs. In its judgment the trial court ordered the defendants to convey to the plaintiffs the real estate involved and ordered the plaintiffs to execute a mortgage to the defendants in the amount of $26,000, less credit for the amortization paid by the plaintiffs since October 1, 1962, and also ordered the plaintiffs to pay to the defendants the sum of $7081.05 for taxes.

The finding, which is not subject to material correction, discloses the following facts: On September 20, 1961, the defendant Angelo Costa and the plaintiffs John J. Morris and Violanda Morris entered into an agreement wherein Angelo Costa agreed to sell certain real estate in Fairfield to the plaintiffs for the full purchase price of $28,000. At the time the agreement was executed the plaintiffs paid Angelo Costa a deposit of $2000. The balance of $26,000 was to be paid by a mortgage and note to be payable over a forty-year period at interest of 6 percent per annum. However, for the first year from October 1, 1961, until September 1, 1962, only interest was to be payable monthly. Monthly payments of interest at the 6 percent rate amounted to $130 per month and from October 1, 1961, through December 1, 1962, the plaintiffs each month paid Angelo Costa that amount. The agreement also provided that amortization on principal was not to commence until October 1, 1962, on which date the payments of principal and interest were to be $143.10. From January 1, 1963, through the time of trial, April, 1975, the plaintiffs paid to Angelo Costa the sum of $143.10 each month.

The written agreement recited that the parties agreed that the closing was to take place on or before September 30, 1961. At the time the agreement was executed the plaintiffs knew that before

they could obtain title to the real estate Angelo Costa had to provide them with a deed and that they had to execute a purchase money mortgage back to him. Angelo Costa, however, was not the record owner of the subject premises at the time of the execution of the sales agreement on September 20, 1961. Angelo Costa did not receive a deed to the premises until January 2, 1962, on which date title went into the names of the defendants Rose Costa and Sadie Costa. The deed was not recorded until August 30, 1963, some eighteen months after its execution. The entire contents of the written agreement were handwritten by Angelo Costa. This included the letters "L.S." on the lines where the parties affixed their signatures. The agreement did not contain any language such as "signed and sealed" or "given under my hand and seal" or some similar phraseology. At the time the plaintiffs signed the agreement they had read and understood all the terms of that agreement. Angelo Costa made no false or fraudulent statements nor representations to the plaintiffs to induce them to sign this written agreement. The plaintiffs moved into the property four or five days after the agreement was executed and they continuously lived there until June 1, 1970. On that date the plaintiffs separated and the plaintiff Violanda Morris has lived there alone ever since. Angelo Costa received from the plaintiffs insurance policies covering the property. These policies were taken out at his specific request and, also at his request, he was named as the mortgage holder.

By a letter dated January 26, 1968, Angelo Costa expressly advised the plaintiffs that they had previously defaulted in their agreement with him, thereby forfeiting their rights under the written

agreement of September 20, 1961, and further advised them the property was no longer for sale. Although the plaintiffs knew in the summer of 1967 that Angelo Costa was not the record owner of the property, he had never given any indication to them, from the time they had moved into the property up to his letter of January 26, 1968, that he would not convey the property to them. Angelo Costa had stalled the plaintiffs' requests for a closing date on many occasions, claiming that he was having trouble with the subdivision and water lines. He had also indicated that he wanted to hold off the closing for a period of time for tax reasons, as well as telling them that they did not have to worry, that the house was theirs and that they owned it. At all relevant times he had also told them they did not need an attorney, that he would take care of the problem for them, and that they would save money as a result. In early February, 1968, counsel retained by the plaintiffs had several conversations with Angelo Costa concerning the sale of the property.

In argument before us the defendants' counsel stated that he was not pressing any assignment of error directed to the subordinate facts but was limiting his claims to the legal issues. This amounts to the abandonment of those assignments claiming error in the court's refusing to find certain material facts which were admitted and undisputed and in finding certain facts without evidence.

The defendants claim that the conclusions of the trial court are not supported by the subordinate facts and that it erred in overruling their claims of law. In our disposition of this appeal we have decided to consider these claims together as they are interrelated. The conclusions attacked are that the defendant Angelo Costa breached the agree-

ment of sale by not closing as agreed on September 30, 1961, that the contract which was the agreement of sale was a contract under seal, that the plaintiffs' claim for specific performance was not barred by General Statutes § 47-33a, and that the plaintiffs commenced their action within the period of time limited for a contract under seal. The defendants argue that the court erred in overruling their claims of law, that the plaintiffs' claim for specific performance of the contract was barred by General Statutes § 47-33a, that the contract was not a contract under seal and that the contract was cancelled and rescinded by the defendant Angelo Costa because of the failure of the plaintiffs to perform their contractual obligations under the contract. We have said that the court's conclusions are to be tested by the findings and not by the evidence. *Yale University* v. *New Haven,* 169 Conn. 454, 464, 363 A.2d 1108; *Hames* v. *Hames,* 163 Conn. 588, 592, 316 A.2d 379. "The conclusions reached by the court must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law *material to the case.*" (Emphasis added.) *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 124, 357 A.2d 910. In this case the defendants pleaded the statute of limitations and laches by way of special defense. The trial court concluded, inter alia, that the contract involved was a contract under seal. We do not agree. *Caputo* v. *DiLoretto,* 110 Conn. 413, 416, 148 A. 367. Although we have determined that the court was in error in concluding that the contract was one under seal, that error is of no significance in this case because of the basis of our disposition of this appeal. *Lonergan* v. *Connecticut Food Store, Inc.,* supra, 129–30. Where the trial court reaches a cor-

rect decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. *Westport* v. *Norwalk,* 167 Conn. 151, 156, 355 A.2d 25; *DiMaggio* v. *Cannon,* 165 Conn. 19, 24, 327 A.2d 561; *Walsh* v. *Turlick,* 164 Conn. 75, 84, 316 A.2d 759; Maltbie, Conn. App. Proc. § 36. The case before us falls within the ambit of this principle of law.

It is undisputed that the agreement executed by the plaintiffs and Angelo Costa was a real estate contract requiring the delivery of a deed in exchange for the cash down payment and the balance by a note secured by a mortgage. The closing was to take place on or before September 30, 1961. The plaintiffs made the required down payment as well as the monthly payments provided for in the contract. They moved into the property four or five days after the execution of the contract. Despite requests by the plaintiffs on many occasions to close the title on the property, Angelo Costa stalled them off and failed to effect a conveyance to them, giving them various reasons for not doing so. On January 2, 1962, title to the property was placed in the names of the defendants Rose Costa and Sadie Costa, sisters of Angelo Costa. This deed was not recorded until August 30, 1963.

From the time the plaintiffs moved into the property they made the monthly payments to Angelo Costa, as provided for in the contract, right down to the time of trial in this case. They also named him as the mortgagee in insurance policies they took out at his specific request. They made the repairs and improvements, which involved expenditures by them in excess of $5000. From the time they entered the premises up to the time of Angelo Costa's letter to them of January 26, 1968, the plaintiffs never

received any indication that he would not convey the property to them. He induced them not to retain counsel: he told them that they did not need an attorney, that he would take care of the problem for them and that they would save money as a result. As soon as they learned of his decision to hold them in default and to consider the property no longer for sale, however, they sought counsel.

As already pointed out, the plaintiffs' action for specific performance was met by special defenses of laches and the statute of limitations. It is basic law that an action for specific performance of a contract to sell real estate is an equitable action and is to be determined by equitable principles. *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.,* 148 Conn. 21, 25, 166 A.2d 710; 71 Am. Jur. 2d, Specific Performance, § 1.

Courts, applying equitable principles, have laid down the doctrine of equitable estoppel by which a defendant may be estopped by his conduct from asserting defenses such as the statute of limitations. 51 Am. Jur. 2d, Limitation of Actions, §§ 431–452; notes, 43 A.L.R.3d 429 and 44 A.L.R.3d 760. "Estoppel rests on the misleading conduct of one party to the prejudice of the other." *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565. "In the absence of prejudice, estoppel does not exist." *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 563, 316 A.2d 394. "There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done."

*Fawcett* v. *New Haven Organ Co.*, 47 Conn. 224, 227; *First Connecticut Small Business Investment Co.* v. *Arba, Inc.*, 170 Conn. 168, 175, 365 A.2d 100; *Novella* v. *Hartford Accident & Indemnity Co.*, supra; *Jensen* v. *Nationwide Mutual Ins. Co.*, 158 Conn. 251, 261, 259 A.2d 598; *Spear-Newman, Inc.* v. *Modern Floors Corporation*, supra; *Tradesmens National Bank* v. *Minor*, 122 Conn. 419, 424, 190 A. 270. "An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is not to support some strict rule of law, but to show what equity and good conscience require, under the particular circumstances of the case." *Lebowitz* v. *McPike*, 157 Conn. 235, 243, 253 A.2d 1.

Both elements of estoppel are present and satisfied in this case. Angelo Costa induced the plaintiffs to believe that he would ultimately transfer the property to them. Such conduct on his part continued over a period of years until 1968 when he then declared to them that he would not deed the property as the contract required him to do. This he did in 1968, without ever having given any prior indication that he would not convey the property to the plaintiffs and after having told them not to worry and that the house was theirs. He met their many requests for a closing, not with any declaration that he did not intend to honor his contract, but with postponements for such reasons for delaying the closing as tax reasons, problems with the subdivision, and water problems.

The plaintiffs acted upon the reasonable belief from the date of the contract that Angelo Costa would keep his contract. They moved into the property, they made the payments they had agreed to, they took out the insurance he requested, and they repaired and improved the property at great

expense to themselves. They did not retain legal counsel: Angelo Costa told them that counsel was not necessary, that he would take care of the problem and that they would thereby save money. The plaintiffs acted to their detriment in their reliance upon the representations of Angelo Costa and he is clearly estopped by his conduct from asserting the defenses of the statute of limitations and laches.

The defendant Angelo Costa caused title to the property to be placed in the name of his sisters, the defendants Rose Costa and Sadie Costa. The finding, however, reveals that Rose did not know that her brother had put the property in her name until the time that her deposition was taken. She indicated that she would still sign over the property to whomever her brother "dictated." As to Sadie, the finding discloses that she would still sign over the property to whomever her brother "directed." It is apparent that the sisters hold bare legal title to this property subject to direction and dictation by Angelo Costa. The maxim that "[e]quity always looks to the substance of a transaction and not to mere form"; *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 397, 216 A.2d 814; clearly applies here. That bare legal title is held by the sisters cannot prevent the doing of complete justice as "[e]quity can always look behind the technical legal title if necessary to work out under its principles the rights of the parties." *Home Owners' Loan Corporation* v. *Sears, Roebuck & Co.,* 123 Conn. 232, 244, 193 A. 769. The court properly ordered the defendants to convey the property to the plaintiffs.

There is no error.

In this opinion the other judges concurred.