[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant Westview Village Developers, Inc. ("Westview") is the owner of certain land in Watertown which has been approved for the construction of condominium units (the CT Page 14575 "Property.") In August, 1993, Westview entered into a written contract to sell the Property to the plaintiff, Stephen J. Barberino, Jr. The plaintiff brought this action in March, 1995 seeking a decree of specific performance of the contract together with money damages for Westview's alleged breach of the contract in failing to convey the Property to the plaintiff. At the same time, the plaintiff also recorded a notice of lis pendens in the Watertown land records, giving notice of this action for specific performance and other relief. Westview now has moved to discharge the notice of lis pendens pursuant to General Statutes § 52-325a(c), claiming that there is no probable cause to sustain the validity of the plaintiff's claim.
Westview contends that the plaintiff cannot establish probable cause to sustain the validity of his claim because his claim for specific performance is barred by General Statutes § 47-33a(a), which provides
 No interest in real Property existing under an executory agreement for the sale of real Property . . . shall survive longer than one year after the date provided in the agreement for the performance of it . . . unless action is commenced within the period to enforce the agreement and notice of lis pendens is filed as directed by section 52-325.
The plaintiff responds with numerous claims, including a claim that Westview is equitably estopped from asserting the defense of the statute of limitations under § 47-33a(a).
It is axiomatic that an action for specific performance is an equitable action and must be decided by equitable principles.Morris v. Costa, 174 Conn. 592, 599 (1978). Among those principles is the doctrine of equitable estoppel, whereby a defendant can be estopped by its own conduct from asserting defenses. Id. Equitable estoppel has two essential elements. First, the party against whom estoppel is sought must do or say something intended to induce another party to believe in the existence of certain facts and to act on that belief. Secondly, the other party must change its position in reliance on those facts, thereby incurring some injury. Lunn v. TokenekeAssociation, Inc., 227 Conn. 601, 607 (1993).
At the hearing on Westview's motion to discharge the notice of lis pendens, the plaintiff called two witnesses, the CT Page 14576 plaintiff and Bradley Egan. Westview did not call any witnesses. Based on the evidence presented, the court finds the facts as hereafter stated.
In August, 1993, the plaintiff and Westview entered into a written contract for the sale of the Property to the plaintiff for $527,000. The plaintiff paid a $10,000 deposit in accordance with the terms of the contract. The Property consists of land and the right to develop seventy-eight condominium units on the land. These seventy-eight units were to be in addition to forty-two units already constructed.
The contract provided that the Property would be purchased in two steps. The plaintiff was to purchase the development rights to twenty condominium units first and then, several months later, purchase the development rights to the remaining fifty-eight units at a second closing. The parties initially agreed that the first closing would occur on October 1, 1993 and the second on July 1, 1994. They then agreed in writing to change the first closing date to December 1, 1993 and the second to September 1, 1994.
Another issue arose as well. The plaintiff learned that the right to develop the seventy-eight units would expire in June, 1995. Because the market for condominium sales was slow at the time, the plaintiff felt it essential that Westview obtain a three-year extension of that expiration date. Simultaneous with signing the contract, both parties initialed a typed addendum which provided that Westview would use its best efforts to obtain the three-year extension. The plaintiff, however, added a hand written sentence to the addendum after the president of Westview had initialed the addendum. Plaintiff's counsel therefore drafted a second addendum which both parties signed in late October, 1993. It provided that Westview would use its best efforts to obtain the three year extension and if the extension "is not obtained on or before the closing date, " the plaintiff could terminate the agreement and obtain the return of his deposit.
Westview, a wholly owned subsidiary of Great Country Bank, a co-defendant in this action, held title to the Property after the bank had acquired it through foreclosure. Bradley Egan, a loan officer at the bank, was given the task of obtaining the three-year extension of the development rights. The plaintiff called Egan periodically to check on his progress in obtaining CT Page 14577 the extension and Egan repeatedly said he needed another thirty or sixty days to do so. Egan repeatedly reassured the plaintiff in these conversations, telling him "not to worry" and that he was not considered in default of the contract for not closing. Egan told the plaintiff on several occasions that he did not need to close the sale of the Property until the extension of the development rights had been procured. The initial closing date of December 1, 1993 passed without a closing because Egan had not obtained the extension. Egan had underestimated the difficulty of obtaining the extension. The consent of the owners of all forty-two existing condominium units was required in order to effect an extension.
Egan continued to work on obtaining the development rights extension in 1994. After April, 1994, Egan no longer worked for the bank on a full-time basis. He worked for the bank as a part-time consultant on Westview and other matters for three months after April while he also worked as a real estate broker.
In August, 1994, Egan, who then no longer worked for the bank, obtained a listing agreement for the Property from Westview. He then presented Westview with an offer to purchase the Property from a different developer, Redstone Development Corp. Redstone, which was prepared to purchase the development rights to all seventy-eight units at a single closing, offered a higher price than the plaintiff. Egan was to receive a broker's commission of approximately $40,000 if Redstone's offer were accepted. No commission was payable in connection with the plaintiff's contract. Westview signed a contract to sell the Property to Redstone despite having a contract with the plaintiff. Westview never returned the plaintiff's $10,000 deposit or gave notice that it considered the plaintiff to be in default, although such notice is expressly required under the terms of the contract.
Westview now contends that the plaintiff's claim for specific performance of his contract is lacking in probable cause because the plaintiff did not bring an action to enforce the contract within one year from the closing date in the contract as required by General Statutes § 47-33a(a). Westview claims that the one year period began on December 1, 1993, the date set in the contract for the "Initial Closing" of the development rights to twenty condominium units. As of December 1, 1993, however, and for some time thereafter, Egan was telling the plaintiff that he did not need to close the sale of the CT Page 14578 Property until the rights extension was obtained and that the plaintiff was not in default under his contract for failing to close. These statements were made with the intent to reassure the plaintiff and have him believe that Westview was not going to insist on strict compliance with the terms of the contract, which required a closing for the development rights to twenty condominium units on December 1, 1993.
The plaintiff relied on Egan's reassurances and his representations that he need not close until the extension was procured. The plaintiff took no action to protect his purchase rights. He did not attempt to schedule a closing nor did he tender the balance of the purchase price. He worked on a site plan revision for the Property and met with the town planner in preparation for taking title. The plaintiff testified that if Egan had not made the statements which he did, and if Westview claimed he was in default, he would have begun suit promptly to enforce his purchase agreement with Westview.
In October, 1994, the plaintiff learned that Westview had signed a purchase contract with Redstone Development. The plaintiff then recorded a copy of his purchase contract in the Watertown land records. He also wrote a letter to the bank president asking whether the extension of the development rights had been granted and putting the bank on notice that he expected compliance with his contract. In March, 1995, this action was brought by the plaintiff.
The court finds that the plaintiff has established probable cause to sustain the validity of his claim in that the facts as found by the court are sufficient to invoke the doctrine of equitable estoppel, whereby the defendant is estopped from asserting the statute of limitations set forth in General Statutes § 47-33a(a). Both elements of estoppel are established. Egan's statements of reassurance and his statements concerning deferral of the closing were made with the intent to placate the plaintiff and assure him that Westview still intended to convey the Property to him despite the passing of the initial closing date. In reliance on those statements, the plaintiff permitted the initial closing date to pass without making tender of the purchase price and without taking any action to enforce his right to purchase. In light of Egan's statements, it would clearly be inequitable to permit Westview now to rely on the initial closing date as the cornerstone of a defense under §47-33a(a) and thereby preclude the plaintiff from seeking specific CT Page 14579 performance, with the result that Westview would sell the Property for a higher price to a different purchaser and Egan would earn a $30,000-$40,000 commission.
The Supreme Court has recognized the applicability of the doctrine of equitable estoppel in a very similar situation. The plaintiffs in Morris v. Costa, supra, had a written agreement to purchase real estate with a stated closing date. The contract "seller," Angelo Costa, was not the record owner of the Property to be conveyed. He delayed the closing and stalled the plaintiffs with excuses. The plaintiffs, in the meantime, had moved into the Property, made improvements and repairs to the Property and made payments monthly to Costa as if the sale had closed and Costa held the purchase money mortgage called for in the purchase agreement. Several years later, Costa advised the plaintiffs that they had long ago defaulted under the terms of the agreement and he did not intend to sell the Property to them.
The plaintiffs brought suit for specific performance and Costa countered with the same claim made by Westview here, the statute of limitations set forth in General Statutes § 47-33a. The Supreme Court readily upheld the trial court's finding and stated that Costa "is clearly estopped by his conduct from asserting the defenses of the statute of limitations . . ." Morrisv. Costa, supra, 174 Conn. 601.
There is no merit to Westview's contention that the facts of the present case are "completely different" from the facts inMorris v. Costa. The defendant's conduct in that case might, perhaps, be viewed as more egregious than that of Egan on behalf of Westview here. But the positions and claims of the parties, the nature of the statements made and the reliance thereon are remarkably similar in both cases, demonstrating the clear applicability of Morris v. Costa as precedent here.
Westview also contends in its post-trial memorandum that the plaintiff failed to establish probable cause with respect to his claim in that he presented insufficient evidence that he was ready, willing and able to purchase the Property. This issue, however, was not raised in Westview's motion to discharge the lis pendens. The motion raised only two issues, that of the bar of § 47-33a, and an issue concerning the propriety of the legal description in the lis pendens, which was resolved prior to the hearing. CT Page 14580
Westview's motion to discharge the notice of lis pendens is denied.
VERTEFEUILLE, J.