## EDWARD COSS ET AL. *v.* DANIEL M. STEWARD ET AL.
### (AC 32014)

Bishop, Lavine and Peters, Js.

Argued October 14, 2010—officially released January 11, 2011

*Joseph P. Zeppieri*, with whom was *Joseph J. Pfeuffer*, for the appellants (plaintiffs).

*Martha A. Shaw*, for the appellees (defendants).

*Opinion*

LAVINE, J. The plaintiffs, Edward Coss and Kathleen Coss, appeal following the rendering of summary judgment in favor of the defendants.[1] On appeal, the plaintiffs claim that the trial court improperly granted the defendants' motion for summary judgment by (1) concluding that the defendants were not equitably estopped from asserting the statute of limitations as a special defense, (2) considering the plaintiffs' right to seek redress from the third party defendant,[2] (3) weighing the facts before the plaintiffs had an opportunity to conduct discovery, (4) considering whether their stone wall was within the defendant town's right-of-way, (5)

---

[1] In addition to the named defendant, Daniel M. Steward, the first selectman for the town of Waterford, the defendants are the town of Waterford (town); James A. Bartelli, assistant director of the utility commission for the town; Michael Stoffel, chief engineer of the utility commission for the town; Ronald R. Cusano, director of the department of public works for the town; Kristin B. Zawacki, assistant director of the department of public works for the town; Edward Machinski, assistant inspector of the utility commission for the town; and Stephen A. Steadman, assistant director of the department of public works for the town.

[2] The defendants served an apportionment complaint against Baltazar Contractors, Inc.

determining that the defendants' conduct at issue was discretionary, not ministerial, (6) concluding that the statutes of limitation applicable to all counts of their amended complaint were tolled on the same date and (7) concluding that there was no evidence that the defendants sought to prevent the plaintiffs from bringing an action. We affirm the judgment of the trial court.

Given the number of claims and defenses, a detailed discussion of the allegations is necessary. The plaintiffs' amended complaint, filed August 27, 2008, alleged that the plaintiffs own 166 Oswegatchie Road in Waterford (town) and that, at all times relevant, the individual defendants were acting in their capacities as agents, officers and/or employees of the town within the scope of their employment for the benefit of the town.[3] The amended complaint further alleged that on February 14, 2001, the defendant Michael Stoffel, the chief engineer of the town's utility commission, and the defendant Ronald R. Cusano, the director of the town's department of public works, wrote to the plaintiffs and others owning property along Oswegatchie Road, informing them that the town planned to install sewers and storm drains along Oswegatchie Road (sewer project). The complaint also alleged that "[t]he letter promised that '[a]t the completion of the job, all property will be restored to an equal or better condition than at the start of the job.'" It further alleged that the town had hired Baltazar

_____

[3] The plaintiffs alleged their cause of action pursuant to General Statutes § 52-557n (a), which provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to . . . property caused by: (A) The negligent acts or omissions of such political subdivision or any employee . . . acting within the scope of his employment . . . (B) negligence in the performance of functions from which the political subdivision derives a special corporate . . . benefit . . . (C) acts of the political subdivision which constitute the creation . . . of a nuisance . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person . . . caused by . . . fraud . . . (B) negligent acts or omissions which require the exercise of judgment or discretion . . . ."

Contractors, Inc. (Baltazar), to install sewer and storm drains in front of the plaintiffs' home. Moreover, the complaint alleged, the defendants knew that Baltazar cut through the earth and stone by blasting, which is an inherently dangerous activity.

The plaintiffs further alleged that the blasting and heavy equipment used during the sewer project disrupted at least one section of the 560 foot wall and shifted stones at points along the wall. In December, 2002, the plaintiffs informed the town and Baltazar that the stone wall had been damaged extensively. The plaintiffs asked the town to undertake repairs as promised. On January 18, 2005, the plaintiffs alleged, Baltazar had restacked some stones along roughly twenty-five feet of their wall but had ignored a section of wall that had been destroyed. The plaintiffs also alleged that the repairs were not done to their satisfaction.

Count one of the amended complaint sounded in negligence. The plaintiffs alleged that the defendants had a nondelegable duty to repair the damage to their wall that was caused by the sewer project and that the defendants were negligent in one or more ways. As a proximate result of the defendants' negligence, the plaintiffs suffered extensive damage to their property. Moreover, the defendants' authorizing of Baltazar to undertake the sewer project, to blast and to use heavy equipment were *discretionary* acts. The plaintiffs alleged that they served notice of their intention to bring an action against the defendants on February 14, 2008, and that their repeated entreaties to the defendants to repair the wall constituted actual notice that the sewer project was not complete. The plaintiffs alleged further that the defendants' repeated promises that they would repair the wall comprised a continuing course of action that tolled the statute of limitations.

Count two of the amended complaint alleged strict liability and count three nuisance.[4]

Count four of the amended complaint sounded in fraud, alleging that Stoffel and Cusano "promised that '[a]t the completion of the job, all property will be restored to an equal or better condition than at the start of the job.'" When the plaintiffs called the town on April 28, 2003, to inquire about the plan to repair their wall, they were told that the town was preparing a "punch list" for repairs and that their wall would be repaired. On July 14, 2003, the plaintiffs called the town utility commission to complain that their wall had not been repaired. On June 25, 2004, Kathleen Coss complained to the defendant Stephen A. Steadman, the assistant director of the town's public works department, that nothing had been done to repair the plaintiffs' wall. Steadman promised to discuss the problem with the defendant Edward Machinski, the assistant inspector of the town's utility commission.

The plaintiffs alleged that on June 29, 2004, they sent Machinski, at his request, a series of photographs depicting the damage to their wall. On December 10, 2004, Kathleen Coss went to the department of public works to speak with Machinski and was promised that Baltazar would be asked to repair the plaintiffs' wall. On January 24, 2005, after Baltazar had performed repairs to the wall, Machinski wrote to the plaintiffs

---

[4] Count two alleged that Baltazar's use of explosives was an inherently dangerous activity likely to cause damage to the plaintiffs' property, irrespective of negligence. It also alleged that the defendants were strictly liable for damages resulting from an inherently dangerous activity, although the activity was undertaken by an independent contractor.

Count three alleged that the defendants' use of blasting had a natural tendency to injure the plaintiffs' property and that the damage to their wall, which provides lateral support to their land, posed a continuing danger to their property and to persons thereon. In addition, it alleged that the damage to their wall reduced the value of their property and diminished their quiet enjoyment of it.

and declared that the repairs were satisfactory. The plaintiffs alleged, however, that Edward Coss spoke with Machinski on February 2, 2005, and told him that the plaintiffs had a videotape of the wall made prior to the blasting. Machinski agreed to review the tape and to *reconsider* repairs to the wall. Edward Coss called the utility commission on October 27, 2005, and was informed that the defendant James A. Bartelli, the assistant director of the town's utility commission, was to review the videotape. On October 31, 2005, Bartelli sent a brief note to the plaintiffs, attaching a copy of Machinski's January 24, 2005 letter.

The plaintiffs alleged that they continued to discuss repairs to their wall with the defendants. On April 18, 2006, Steadman wrote to the plaintiffs and promised to repair their wall during the summer of 2006. No repairs, however, were made to their wall during the summer of 2006. Kathleen Coss met with the defendant Daniel M. Steward, the town's first selectman, on August 20, 2007. Steward promised to contact the appropriate people and agreed that the town should make the repairs when funds were available. The plaintiffs met with the defendant Kristin B. Zawacki, the assistant director of the town's department of public works, who promised to research the matter and to get back to them. The plaintiffs also alleged that Cusano wrote to them on October 3, 2007, telling them that the town's utility commission, not the department of public works, was responsible for repairing their wall. The plaintiffs alleged that the defendants repeatedly stalled and made false promises to repair the damage to their property. Finally, the plaintiffs alleged that the intent and effect of the defendants' false promises were to deceive the plaintiffs and to induce them to forgo their right to seek a legal remedy. The plaintiffs sought money damages, punitive damages, costs, attorney's fees and any other remedy the court might deem appropriate.

On September 18, 2008, the defendants responded to the amended complaint. They admitted that on February 14, 2001, they informed the plaintiffs of the sewer project by letter and that the letter stated that " '[a]t the completion of the job, all property will be restored to an equal or better condition than at the start of the job' . . . ." The defendants also admitted that the town entered into a contract with Baltazar, which was a discretionary act. As to the remaining allegations of the amended complaint, the defendants denied sufficient knowledge or information as to some of the allegations and denied any allegations of wrongdoing. The defendants also alleged special defenses to the counts sounding in negligence, strict liability and nuisance, and five special defenses to the fraud count.

The parties engaged in an extended period of discovery disputes before the defendants filed a motion for summary judgment on August 26, 2009. In their motion, the defendants claimed that all of the plaintiffs' claims were barred by the applicable statutes of limitation and that some were barred by governmental immunity. The court granted the motion for summary judgment as to all counts, finding that there were no genuine issues of material fact that the plaintiffs first noticed the blasting damage to their stone wall in December, 2002, at which time they informed the town and Baltazar of the damage. The court concluded that the plaintiffs had until December 30, 2005, to bring their claims for damages, absent inequitable conduct by the defendants. The plaintiffs, however, did not commence this litigation until June, 2008, which was well beyond the three year statute of limitations provided by General Statutes § 52-577.[5]

---

[5] General Statutes § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

Although the plaintiffs claimed that the defendants had deceived them by promising to repair their wall, they identified no undisputed facts to support their assertion. The defendants' February 14, 2001 letter instructed the plaintiffs that "[i]f you should suffer any damage please forward your claim in writing, with a copy to this office, to: Baltazar Contractors." On January 24, 2005, Machinski told the plaintiffs in a letter that the town had sent Baltazar to repair the wall and that he had inspected Baltazar's work and found it satisfactory. On October 31, 2005, Bartelli referred the plaintiffs to Machinski's letter of January 24, 2005. The court concluded that at the end of October, 2005, the plaintiffs had two months to bring an action for damage to their wall but did not do so. The court also determined that the plaintiffs' claim of equitable estoppel based on the defendants' alleged continuing course of conduct that occurred subsequent to December 30, 2005, was not viable.[6]

More particularly, the court wrote: "The plaintiffs' allegations and affidavits contain no claims or evidence that the defendants made any assurances that the town would undertake to repair the plaintiffs' wall between the October 31, 2005 letter and December 30, 2005. While the plaintiffs aver that following the October 31, 2005 letter they 'continued to discuss the issue of repair to our wall with officials of the [t]own . . .' they do not attest to the substance of those conversations and do not allege or support with evidence that the town

---

[6] The court noted that the doctrine of equable estoppel " 'rests on the misleading conduct of one party to the prejudice of the other'," quoting *Morris* v. *Costa*, 174 Conn. 592, 599, 392 A.2d 468 (1978). The court found that the plaintiffs had not alleged any misleading conduct by the defendants during the relevant statutory period but that two letters sent to the plaintiffs in 2005 made clear that the defendants had done all of the repair work they intended to do and that if the plaintiffs wanted to pursue the matter, they should file a claim. Moreover, anything the plaintiffs did after January 2, 2006, was of no import because the statute of limitations already had run.

made any assurances of further repair before December 30, 2005. . . . Indeed, it isn't until April 18, 2006, that the plaintiffs claim the town promised to repair their wall. This alleged promise occurred well after the three year statute of limitations had expired and cannot be seen as [a] deceptive act that could have wrongfully induced the plaintiffs into postponing the commencement of litigation beyond the statute of limitations. By April, 2006, the defendants may have had several motivations for offering to repair the plaintiffs' wall, but by that point the statute of limitations had run and the threat of litigation was no longer one of them." (Citation omitted.)

The court reasoned that the continuing course of conduct doctrine did not toll the statute of limitations because the plaintiffs knew of the damage to their wall in December, 2002. The court cited *Rosato* v. *Mascardo*, 82 Conn. App. 396, 404–405, 844 A.2d 893 (2004), for the rule that the statute of limitations begins to run when the plaintiff discovers some form of actionable harm. In this case, it found no factual dispute that the plaintiffs were aware of damage to their wall in December, 2002. For that reason, the court concluded that the continuing course of conduct doctrine did not toll the statute of limitations.

The court also concluded that the plaintiffs' claims, including strict liability, were barred by § 52-577. See *Prokolkin* v. *General Motors Corp.*, 170 Conn. 289, 294, 365 A.2d 1180 (1976) ("§ 52-577 states the limitation pertinent to a strict liability action"). With regard to the claim of fraud, the court found that the defendants repeatedly advised the plaintiffs of their right to seek satisfaction from Baltazar or its insurer. Moreover, the court found that the conduct relied upon by the plaintiffs to support their claim of fraud was discretionary, not ministerial, to which governmental immunity

applies. The court therefore granted the defendants' motion for summary judgment. The plaintiffs appealed.

We review the plaintiffs' claims under the well established standard of review regarding the rendering of summary judgment. See *Vestuti* v. *Miller*, 124 Conn. App. 138, 142, 3 A.3d 1046 (2010). An appellate court "must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as a trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citation omitted; internal quotation marks omitted.) Id.

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996). "A mere assertion of fact in the affidavit of the party opposing summary judgment is not enough to establish the existence of a material fact that, by itself, defeats a claim for summary judgment." (Internal quotation marks omitted.) *Double G.G. Leasing, LLC* v. *Underwriters at Lloyd's, London*, 116 Conn. App. 417, 430,

978 A.2d 83, cert. denied, 294 Conn. 908, 982 A.2d 1082 (2009). "Where the trial court is presented with undisputed facts . . . our review of its conclusions is plenary, as we must determine whether the court's conclusions are legally and logically correct [and find support in the facts that appear in the record]." (Internal quotation marks omitted.) *Vestuti* v. *Miller*, supra, 124 Conn. App. 143.

I

The plaintiffs claim that the court impermissibly determined that the defendants' § 52-577 statute of limitations special defenses to the claims of negligence, strict liability and nuisance were not barred by the doctrine of equitable estoppel. We do not agree with the plaintiffs.

"The doctrine of equitable estoppel is well established. [W]here one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is [precluded] from averring a different state of things as existing at the time. . . . Equitable estoppel is a doctrine that operates in many contexts to bar a party from asserting a right that it otherwise would have but for its own conduct. . . . In its general application, we have recognized that [t]here are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." (Citations omitted; internal quotation marks omitted.) *Blackwell* v. *Mahmood,* 120 Conn. App. 690, 694–95, 992 A.2d 1219 (2010). "[T]here must generally

be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury." (Internal quotation marks omitted.) *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 564, 316 A.2d 394 (1972). "In the absence of prejudice, estoppel does not exist." (Internal quotation marks omitted.) *Morris* v. *Costa*, 174 Conn. 592, 599, 392 A.2d 468 (1978).

"In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Internal quotation marks omitted.) *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 726, 917 A.2d 540 (2007). "A party seeking to justify the application of the estoppel doctrine by establishing that a public agency has induced his actions carries a significant burden of proof." Id., 727.

In this case, there is no evidence that the plaintiffs were prejudiced by their communications with the defendants. The prejudice the plaintiffs claim, in essence, is having been lulled into forgoing an action for damage to their stone wall within the time permitted by law. The documents in the record include a copy of the February 14, 2001 letter from Stoffel and Cusano to the residents of Waterford. In the center of the first page appear the words, "[i]f you should suffer any damage please forward your claim in writing, with a copy to this office, to: Baltazar Contractors, Inc." The plaintiffs' affidavits provide no support for their cause, despite their arguments to the contrary. The plaintiffs attested that in January, 2005, Baltazar sent agents or employees to repair the wall. On January 24, 2005, Machinski wrote to the plaintiffs and stated that "I have inspected and

witnessed the rework work and am satisfied with the results. The affected [stone wall] area is now found to be in equal condition as it [was] prior to the construction project and therefore acceptable to the [u]tility [c]ommission. Baltazar [Contractors, Inc.] has fulfilled [its] contractual obligations with regard to this matter. In the event you feel that the existing condition is unsatisfactory, kindly forward any claim to Baltazar [Contractors, Inc.] . . . and their insurance carrier . . . ." On October 31, 2005, Bartelli sent the plaintiffs a note, stating: "Further to your October 28, 2005 inquiry, enclosed please find correspondence sent to you regarding the disturbance of your [stone wall] during the [sewer project]." The affidavits and documents demonstrate that there is no genuine issue of material fact that prior to the expiration of the three year statute of limitations on December 31, 2005, as provided by § 52-577, the defendants told the plaintiffs that the stone wall had been repaired to the defendants' satisfaction.

On appeal, the plaintiffs claim that paragraphs 6, 10, 12, 15, 20 and 21 of their respective affidavits indicate that the defendants made express promises and statements or acted in a way that led them to believe that the wall would be repaired.[7] The paragraphs cited by the plaintiffs address a series of communications

---

[7] The plaintiffs' affidavits were identical save for the change of pronouns. As stated in the standard of review contained in this opinion, "[a]ffidavits filed in connection with a motion for summary judgment must be made on personal knowledge, must set forth facts which would be admissible in evidence, and must show that the affiant is competent to testify to all matters stated in the affidavit. . . . Mere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue." (Internal quotation marks omitted.) *Double G.G. Leasing, LLC* v. *Underwriters at Lloyd's, London,* supra, 116 Conn. App. 430. None of the paragraphs relied on by the plaintiffs appeared to be admissible evidence. The paragraphs contain hearsay or double hearsay; see *Blinkoff* v. *O & G Industries, Inc.,* 113 Conn. App. 1, 12, 965 A.2d 556 (hearsay insufficient to create genuine issue of fact), cert. denied, 291 Conn. 913, 969 A.2d 175 (2009); or a legal conclusion.

between the plaintiffs and the defendants in chronological order. The plaintiffs attest that on October 31, 2005, Bartelli sent Edward Coss a brief note, attaching a copy of Machinski's January 24, 2005 letter. On the basis of the record before us, we cannot conclude that the defendants induced the plaintiffs to refrain from bringing an action for damage to their wall prior to the running of the statute of limitations. At the end of October, 2005, two months prior to the expiration of the statute of limitations, Bartelli let the plaintiffs know again that the defendants considered the wall to have been returned to an "equal condition" to what it was prior to the sewer project and that the defendants were satisfied with Baltazar's repairs. The trial court, therefore, properly concluded that there was no genuine issue of material fact that the defendants were not estopped from asserting statute of limitations special defenses to the plaintiffs' claims.[8]

---

[8] The plaintiffs also claim that in deciding that the defendants were not estopped from asserting statute of limitations special defenses, the court considered irrelevant issues, specifically, that the defendants had told the plaintiffs to file a claim with Baltazar if they were dissatisfied with repairs to the wall. We need not spend much time on this claim because the determinative material fact is whether the defendants told the plaintiffs prior to the expiration of the statute of limitations that they were satisfied with the repairs made to the wall, and, if the plaintiffs were not, they should bring a claim. The court's reference to Baltazar, however, is not dispositive of the issue.

In their brief on appeal, the plaintiffs also argue that the court "repeatedly stated that the defendants had told the plaintiffs that they should approach Baltazar . . . and not the [town] to repair their wall." The plaintiffs argue that the town's deflecting its liability was irrelevant. The plaintiffs' argument goes to the manner in which the town sought to manage its liability, not to whether the court properly determined that their claims were time barred.

The plaintiffs also claim that the court considered as a material issue a statement made by Steadman in his April 18, 2006 letter that a "review of your deed and survey plans shows that the wall is within the Oswegatchie Road right-of-way." The plaintiffs base this claim on the court's having included Steadman's statement in its memorandum of decision. Our review of the memorandum of decision discloses that reference to Steadman's statement is under the heading summary of claims and procedural history. The statement is not mentioned in the court's discussion of the defendants'

## II

The plaintiffs claim that they were denied due process because the defendants' motion for summary judgment was granted after the court had granted the defendants' motion for a protective order regarding the plaintiffs' discovery. We disagree.

The record discloses a contentious procedural history pertaining to this claim. In late March and early April, 2009, the plaintiffs sent nonstandard interrogatories and requests for production to the town and Steward,[9] to which the defendants objected. Subsequently, the plaintiffs served the standard interrogatories and requests for production and requests for admission on each of the defendants. The defendants responded with a motion for a protective order. In their memorandum of law in support of their motion for a protective order, the defendants claimed that many of the discovery requests were "repetitive, irrelevant, immaterial, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not limited in time and scope, seek attorney work product, or inquire into privileged matters." On November 3, 2009, the court granted the motion for a protective order, stating: "Granted only for so long as the motion for summary judgment argued on October 26, 2009, is awaiting decision. If motion for summary judgment is denied, this motion may be reclaimed for consideration on its merits."

In their appellate brief, the plaintiffs claim that the protective order denied them their state constitutional rights to due process and access to the courts, and the

motion for summary judgment, and we, therefore, cannot conclude that the court considered the statement material to its decision.

[9] The plaintiffs submitted 105 interrogatories and 13 requests for production to the town and 153 interrogatories and 61 requests for production to Steward.

right to conduct discovery pursuant to our rules of practice. See Practice Book § 13-2. Despite those claims, the plaintiffs acknowledge that a court's rulings on discovery orders are subject to review for abuse of discretion. On this record, we cannot conclude that the plaintiffs were denied the right to conduct discovery, as they were permitted to pursue discovery under our rules of practice. The defendants, however, objected and filed a motion for a protective order. Therefore, it is the court's granting of the motion for a protective order that we must review for abuse of discretion.

Practice Book § 13-5 provides in relevant part: "Upon motion by a party from whom discovery is sought, and for good cause shown, the judicial authority may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . that the discovery may be had only on specified terms . . . ." "[T]he [trial] court's inherent authority to issue protective orders is embodied in Practice Book § 13-5 . . . ." (Internal quotation marks omitted.) *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 14, 961 A.2d 1016 (2009). "The use of protective orders and the extent of discovery is within the discretion of the trial judge. . . . We have long recognized that the granting or denial of a discovery request . . . is subject to reversal only if such an order constitutes an abuse of that discretion." (Citations omitted; internal quotation marks omitted.) Id., 15.

In this case, the court granted the defendants' motion for a protective order subject to its decision on the defendants' motion for summary judgment. The court, however, did not state its reasons for granting the motion for a protective order, and the plaintiffs failed to seek an articulation. Without an articulation, the record is inadequate for our review. See *Boczer* v. *Sella,*

113 Conn. App. 339, 346, 966 A.2d 326 (2009) (declining review due to inadequate record).

Nonetheless, even if the court had abused its discretion by granting the motion for a protective order, the plaintiffs have failed to demonstrate how they were harmed by the protective order. "Practice Book § 13-2 provides in relevant part: In any civil action . . . where the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain in accordance with the provisions of this chapter discovery of information or disclosure . . . whether the discovery or disclosure relates to the claim or defense of the party seeking discovery . . . . Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action . . . ." (Internal quotation marks omitted.) *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 27, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004). Here, the plaintiffs argued that the court improperly granted the defendants' motion for a protective order, but they failed to identify even one of the hundreds of interrogatories that would have been of assistance in prosecuting the claims alleged in their amended complaint or which specific discovery requests would have created a genuine issue of material fact regarding the defendants' motion for summary judgment.[10] Compare *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56–60, 459 A.2d 503 (1983) (abuse of discretion to deny discovery where court determined factual presentation necessary).

III

The plaintiffs also claim that the court improperly granted the defendants' motion for summary judgment

---

[10] The plaintiffs argued in their brief that the "court did not allow the plaintiffs to obtain evidence which would show the results for other residents who had sought satisfaction from Baltazar . . . ." How other residents were treated by Baltazar is not relevant or material to the claims alleged in the plaintiffs' amended complaint.

by requiring the plaintiffs to prove their case and by making factual determinations. The plaintiffs take issue with the court's finding that "[t]here is no evidence to support the proposition that town officials sought to prevent the plaintiffs from suing Baltazar prior to the expiration of the statute of limitations" and argue that the court improperly put the burden on them to prove their case. The plaintiffs misapprehend the standard applicable to a motion for summary judgment. The non-moving party is not required to prove its case but to demonstrate genuine issues of material fact. The court in this case found that the plaintiffs failed to make such a showing. The plaintiffs identified fifteen paragraphs in each of their affidavits that they claim are evidence that the defendants made false statements that led them to believe that the town would repair the wall. We have reviewed each of the paragraphs and cannot agree.

Review of the plaintiffs' affidavits discloses a number of things that undermine their argument. First, some paragraphs contain hearsay or double hearsay.[11] See *Jaiguay* v. *Vasquez*, 287 Conn. 323, 363, 948 A.2d 955 (2008) (factual assertions based on inadmissible hearsay insufficient for purpose of opposing summary judgment motion). Second, some of the paragraphs are conclusions,[12] not statements of fact. Third, many of the paragraphs relate to a time subsequent to December 30, 2005.[13] See footnote 7 of this opinion. We are persuaded, therefore, that none of the paragraphs concerning the time prior to the running of the statute of

---

[11] At paragraph 10 of his affidavit, Edward Coss attests: "My wife called the town of Waterford on April 28, 2003 to inquire about the town's plan to repair our wall, and she was told that the town was just preparing a punch list for repairs that would be required along the sewer route through the neighborhood, and she was assured that our wall would be repaired in the course of that work."

[12] At paragraph 17 of his affidavit, Edward Coss attests: "The repair was not performed in a workman-like manner . . . ."

[13] Paragraphs 24 through 31 concern events that allegedly occurred after December 30, 2005.

limitations on December 30, 2005, raises a genuine issue of material fact as to the plaintiffs' claims.

## IV

The plaintiffs claim that the court impermissibly rendered summary judgment on count four, which sounded in fraud, because the court concluded that the statute of limitations for this claim ran on the same date the statute of limitations ran on the plaintiffs' other claims against the defendants.[14] We disagree, as there is no basis for the plaintiffs' claim.

The court found that the gravamen of the plaintiffs' fraud claim "is that the [defendants] stalled and made false promises to the plaintiffs in order to induce them to forgo their right to seek a remedy before the court. As [it] is evident that the [defendants] repeatedly advised the plaintiffs of their right to seek satisfaction from Baltazar or Baltazar's insurer. There is no evidence to support the proposition that [the defendants] sought to prevent the plaintiffs from suing Baltazar prior to the expiration of the statute of limitations."

Our Supreme Court repeatedly has held that the essential elements of an action in common-law fraud "are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . Under a fraud claim of this type, the party to whom the false representation was made claims to have relied on that representation and to have suffered harm as a

---

[14] In asserting their claim, the plaintiffs contend that (1) the statute of limitations should have been tolled by the defendants' continuing course of conduct, (2) the court erred when it concluded that (a) the defendants' acts were discretionary, not ministerial, and (b) the evidence indicated that the defendants' conduct was not "in any way deceptive or could have lulled the plaintiffs into forgoing litigation."

result of the reliance. . . . In contrast to a negligent representation, [a] fraudulent representation . . . is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." (Citation omitted; internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC,* 298 Conn. 124, 142, 2 A.3d 859 (2010).

In this case, the court had the affidavits of the plaintiffs and certain documents authored by the defendants. That evidence demonstrates that on January 24, 2005, Machinski wrote to the plaintiffs and declared that the repairs to the wall were done, and that he was "satisfied with the results" and that the defendants considered the wall to have been restored to a condition equal to what it was before the sewer project. Edward Coss spoke to Machinski and told him that the plaintiffs had a videotape of the wall as it existed prior to the sewer project. Machinski agreed to look at the tape and to *reconsider* making repairs. On October 27, 2005, Edward Coss again contacted the utility commission and was told that Machinski would not review the videotape but that Bartelli would. On October 31, 2005, Bartelli sent a brief note to the plaintiffs, attaching a copy of Machinski's January 24, 2005 letter, in essence affirming the defendants' decision not to perform further repairs to the wall. The plaintiffs alleged no specific acts of the defendants[15] and presented no evidence that subsequent to October 31, 2005, and prior to December 30,

[15] At paragraph 47 of count four of their amended complaint, the plaintiffs alleged that "[o]n October 3, 2007, Ronald R. Cusano, Director of the Waterford Public Works Department wrote to the [plaintiffs] to tell them that it was the Waterford Utility Commission, and not the Public Works Department that was responsible for repairing the [plaintiffs'] wall." The plaintiffs' amended complaint does not allege any facts that occurred between October 31 and December 30, 2005.

Thereafter, the plaintiffs' amended complaint alleges: ·

"[48.] The Defendants repeatedly stalled and made false promises to repair the damage to the Plaintiffs' property caused by their use of explosives.

"[49.] The Defendants repeated false promises to repair the Plaintiffs' wall were a continuing course of action which tolled the statute of limitations.

2005, any of the defendants communicated with the plaintiffs, let alone promised to repair the plaintiffs' wall. We conclude, therefore, that the court properly rendered summary judgment in favor of the defendants on the plaintiffs' fraud claim.

V

The plaintiffs' last claim is that the court impermissibly concluded that "[t]here is no evidence that town officials sought to prevent the plaintiffs from suing . . . ." We disagree.

The portion of the court's memorandum of decision with which the plaintiffs take exception states: "The plaintiffs' allegations and affidavits contain no claims or evidence that the defendants made any assurances that the town would undertake to repair the plaintiffs' wall between the October 31, 2005 letter and December 30, 2005. While the plaintiffs aver that following the October 31, 2005 letter they 'continued to discuss the issue of repair to our wall with officials of the town of Waterford' . . . they do not attest to the substance of those conversations and do not allege or support with evidence that the town made any assurances of further repair before December 30, 2005." (Citation omitted.)

The plaintiffs argue, citing *Sallies* v. *Johnson*, 85 Conn. 77, 81 A. 974 (1911), that by pleading that the defendants led them to believe that the town would repair the wall, they could withstand the defendants' motion for summary judgment. We agree that *Sallies* states in relevant part that "[a]fter stating what representations were made with sufficient particularity, it is enough to aver that they were wrongful, false, and fraudulent. It is not necessary in such a pleading to define the meaning of these terms; and to say that the

---

"[50.] The intent and effect of the Defendants' stalling and false promises were to deceive the [plaintiffs] and to induce them to [forgo] their right to seek a remedy before the court."

representations were made with intent to deceive, would add nothing to the allegation that they were false and fraudulently made." (Internal quotation marks omitted.) Id., 82. That language, however, concerns the sufficiency of pleading, not the facts needed to prove the allegations of a complaint or to withstand a motion for summary judgment. We agree, therefore, with the court that in opposing the defendants' motion for summary judgment, the plaintiffs failed to plead or to raise a genuine issue of material fact that after telling the plaintiffs again on October 31, 2005, that the wall was repaired to their satisfaction, the defendants said or did anything prior to December 30, 2005, to lead the plaintiffs to believe that the town would repair the wall.

The judgment is affirmed.

In this opinion the other judges concurred.